UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORINNE MALDONADO and JAROSLAW ZIEBA,<br>    *Plaintiffs*,<br>    *v.*<br>ERIC H. HOLDER, Jr., JANET NAPOLITANO, ALEJANDRO MAYORKAS, and LEAH VAN WILGEN,[1]<br>    *Defendants*. | Civil No. 3:13-cv-492 (JBA)<br><br>March 11, 2015 |

**RULING GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**

This is an action for review of the denial by United States Citizenship and Immigration Services ("USCIS") of Plaintiff Corinne Maldonado's I-130 Petition for Alien Relative ("I-130"), which she filed on behalf of the second-named plaintiff, her husband Polish citizen Jaroslaw Zieba on June 8, 2011. The action was commenced on April 10, 2013 against Defendants John Kerry, Eric Holder, Janet Napolitano, Alejandro Mayorkas, and Leah Van Wilgen in their official capacities as representatives of the United States Department of State, Attorney General, Homeland Security, USCIS, and Hartford Field Office for USCIS, respectively. Plaintiffs now move [Doc. # 18] for summary judgment. Defendants move [Doc. # 20] for a dismissal of the case for lack of jurisdiction, or in the alternative, for summary judgment. Oral arguments on both motions were held on January 20, 2015. For the following reasons, Defendants' motion to dismiss is granted for lack of jurisdiction.

---

[1] By consent of the parties, John Kerry is no longer a named defendant in this case. The Clerk is directed to revise the caption accordingly.

I.      Background

Plaintiff Jaroslaw Zieba entered the United States on around September 16, 2000 on a valid B1/B2 visitor visa. (Defs.' Loc. R. 56(a)2 Stmt. [Doc. # 23] ¶ 2.) Although Mr. Zieba's visa expired on July 16, 2001, he did not leave the country. (*Id.* ¶ 2–3.) On or about November 8, 2005, Mr. Zieba was served with a Notice to Appear at removal proceedings. (*Id.* ¶ 3.) About five and a half years later, on May 6, 2011, he married U.S. citizen Corinne Maldonado. (*Id.* ¶¶ 4–5.) Shortly after their marriage, on June 7, 2011, Ms. Maldonado filed an I-130 petition on behalf of her husband, seeking acknowledgment from USCIS that Mr. Zieba was an "immediate relative." (Administrative Record ("AR") [Doc. # 15] 137); *see* 8 U.S.C. § 1154.

An I-130 petition in and of itself does not confer legal status on an individual, but if the petition is granted, the beneficiary becomes eligible to apply for a visa or adjustment of status to lawful permanent resident. *See* 8 U.S.C. §§ 1154, 1255. Under the statutory guidelines, once an I-130 petition is filed, the Attorney General shall investigate the facts of the case, and "if he determines that the facts stated in the petition are true," he "shall" "approve the petition." 8 U.S.C. § 1154(b). However, where, as here, the beneficiary and petitioner are married after the beneficiary is already in removal proceedings, the beneficiary must reside outside the United States for a two-year period beginning after the date of the marriage, unless the beneficiary can establish "by clear and convincing evidence to the satisfaction of the Attorney General" that he qualifies for the bona fide marriage exemption: that is, "that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the [beneficiary's] admission as an

immigrant and no fee or other consideration was given . . . for the filing of [the] petition." 8 U.S.C. § 1255(e)(3).

In attempting to meet their burden, Ms. Maldonado and Mr. Zieba submitted, along with their I-130 petition the following documentation: "notarized letters from family and friends;" "notarized statement from landlord;" "phone bills and records;" "joint bank account statements;" and "gas and electric bills." (Defs.' 56(a)2 ¶ 6.) They interviewed jointly and separately with USCIS on May 24, 2012, and at the interview, they provided a letter from Ms. Maldonado's employer, Melanie Abruzzo, Mr. Zieba's insurance policy naming Ms. Maldonado as beneficiary, and 2011 state and federal joint tax returns. (*Id.* ¶¶ 7, 11.)

The interviewing officer, observing what he believed to be inconsistencies in Ms. Maldonado's and Mr. Zieba's statements, referred Plaintiffs' file to the Fraud Detection and National Security Directorate ("FDNS") for further investigation. (AR 183–85.) As part of that investigation, on June 15, 2012, immigration officers visited three addresses associated with Ms. Maldonado (240 Alice Street, 109 Beachview Ave, and 19 Oak Hill Street) to attempt to confirm whether she lived at her claimed marital address of 19 Oak Hill Street. (AR 167.) On the basis of those visits and a search of public records, Defendants determined that Plaintiffs' application was fraudulent. (AR 164.)

By letter dated September 11, 2012, Defendants notified Plaintiffs of their intent to deny the I-130 petition and requested additional evidence that the marriage was bona fide. (AR 90–95.) Plaintiffs' counsel replied on October 10, 2012, disputing that the submitted evidence was insufficient and appending additional evidence in the form of: utility statements, marriage certificate, short-term medical insurance, birth certificates,

3

landlord statement and lease, 2011 joint tax returns with Ms. Maldonado's W-2, photo identification of individuals who had previously written letters of support, joint bank statements, an affidavit by Mr. Zieba, and a letter by Ms. Maldonado. (Defs.' 56(a)2 ¶ 25.) Nonetheless, on April 2, 2013, Defendants denied Plaintiffs' petition, finding that Plaintiffs had not established by clear and convincing evidence that their marriage was bona fide. (AR 2–8.) Plaintiffs initiated this action a week later, on April 10, 2013. (*See* Compl. [Doc. # 1].)

## II.  Relevant Statutory Provisions

For ease, a table identifying the relevant statutory provisions discussed by the Court is included here.

| Statute | Text |
|---|---|
| § 1252(a)(2)(B)(ii) (jurisdiction-stripping provision) | "[N]o court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" |
| § 1154(b) (authority to grant I-130) | "[T]he Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . ., approve the petition" |
| § 1154(g) (2-year residence requirement) | "[E]xcept as provided in section 1255(e)(3) of this title, a petition may not be approved to grant an alien immediate relative status or preference status by reason of a marriage which was entered into during the period [in which removal proceedings are pending] until the alien has resided outside the United States for a 2-year period beginning after the date of the marriage" |
| § 1255(e)(3) (bona fide marriage exemption) | "[S]ection 1154(g) of this title shall not apply with respect to a marriage if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith" |

**III.    Discussion[2]**

The Administrative Procedure Act ("APA"), provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," 5 U.S.C. § 702, unless review is precluded by statute or the decision at issue was "committed to agency discretion by law," *id.* § 701(a).  Nonetheless, Defendants contend that the Court lacks subject matter jurisdiction to hear this case pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(ii),[3] which strips courts of jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" with one exception, not relevant for purposes of this case.

The question for the Court is thus whether the Attorney General's decision to deny an I-130 petition which is based on a determination under the bona fide marriage

---

[2] "[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)).  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).  In response to a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[3] Without explanation, Defendants do not contend that the Court lacks jurisdiction pursuant to § 1252(a)(2)(B)(i), which states that "no court shall have jurisdiction to review – any judgment regarding the granting of relief under section . . . 1255 of this title."

exemption (§ 1255(e)(3)) is a decision or action specified by the statute to be in the discretion of the Attorney General (under § 1252(a)(2)(B)(ii)).  The Second Circuit held in *Ruiz v. Mukasey*, 552 F.3d 269, 275 (2d Cir. 2009) that the denial of an I-130 petition is generally not the type of discretionary decision falling under § 1252(a)(2)(B)(ii). However, because the petition at issue in *Ruiz* did not invoke the bona fide marriage exemption (§ 1255(e)(3)), the Second Circuit only examined the text of § 1154(g), which it held does not specifically give the Attorney General discretion regarding whether to grant an I-130 petition.  The court noted that § 1154(g) does not include language such as "in the discretion of the Attorney General" or "to the satisfaction of the Attorney General," which would have precluded judicial review.  *Id.* at 275.

The *Ruiz* court did not have reason to, and thus did not, consider the text of § 1255(e)(3) which authorizes the Attorney General to grant a bona fide marriage exemption.  That section, unlike § 1154(g), requires a petitioner to make a showing "to the satisfaction of the Attorney General," using language the Second Circuit specifically identified in *Ruiz* as indicative of discretion.  Thus, the fact that the Attorney General's decision here related to an I-130 petition does not, notwithstanding Plaintiffs' arguments to the contrary, put the decision under the aegis of *Ruiz*.  Indeed, the Second Circuit specifically noted in *Ruiz* that its "conclusion does not imply that all decisions relevant to I-130 petitions are necessarily subject to judicial review." *Id.* at 276 n.5.

Plaintiffs nonetheless contend that § 1252(a)(2)(B)(ii) does not bar review of their claim because § 1252, entitled "Judicial Review of Orders of Removal," applies only to appeals of decisions made in relation to removal proceedings, and Plaintiffs appeal only the denial of their I-130 petition.  Plaintiffs' argument is a familiar one.  Several courts,

including courts within this Circuit have adopted the argument.  *See Talwar v. U.S. I.N.S.*, No. 00 CIV. 1166 (JSM), 2001 WL 767018, at *5 (S.D.N.Y. Jul. 9, 2001) (holding that § 1252(a)(2)(B) is limited to the context of removal proceedings); *Burger v. McElroy*, No. 97 Civ. 8775, 1999 WL 203353, at *4 (S.D.N.Y. 1999) (same); *see also Mart v. Beebe*, 94 F. Supp. 2d 1120, 1123–24 (D. Or. 2000) (same).

However, these decisions predate the REAL ID Act which went into effect in 2005 and altered the language in § 1252(a)(2)(B) in a significant way.  Whereas prior to 2005, subsection (B) began: "[N]o court shall have jurisdiction to review–," after May 10, 2005, it read: "[R]egardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–."  Commentators, *see* Daniel Kanstroom, *The Better Part of Valor: The REAL ID Act, Discretion, and the 'Rule' of Immigration Law*, 51 N.Y.L. Sch. L. Rev. 161, 164 n.14 (2006–2007) ("Th[e] . . . change [to the language of § 1252(a)(2)(B)] was evidently a response to cases that had determined that § 1252(a)(2)(B)(ii) only applied to decisions made in the context of removal proceedings."), and evidently courts (given the dearth of post-2005 decisions finding that § 1252(A)(2)(B)(ii) is limited to the context of removal proceedings) have viewed this change as a repudiation of the prior decisions limiting the scope of the jurisdictional bar.  Plaintiffs point to no decisions by courts finding otherwise since 2005, nor has the Court located any.  In light of the plain language of § 1252(a)(2)(B)(ii) extending the scope of the jurisdictional bar to decisions made outside the context of removal proceedings, the Court concludes that the jurisdictional bar is not limited to decisions made in the context of removal proceedings.

Plaintiffs' final contention, that reading the statute in such a way as to deny judicial review of I-130 petitions which invoke the bona fide marriage exemption renders the statute unconstitutional, is equally unpersuasive. Plaintiffs assert that because marriage is a fundamental right, "the I-130 Petition process implicates important equal protection rights," which "cannot be lightly removed from the jurisdiction of an Article III Court." (Pls.' Mem. Supp. Mot. for Summ. J. [Doc. # 24] at 15.) However, Plaintiffs fail to acknowledge the critical fact that the Attorney General's denial of an I-130 petition does not prevent the petitioner and beneficiary from marrying. Nor do Plaintiffs provide support for the proposition that there is a fundamental right "to reside together in this country [with one's spouse]" (*id.*) or that there is a fundamental right to have a fraudulent marriage recognized by the Government.

Because Plaintiffs' constitutional argument lacks merit and because decisions under § 1255(e)(3) are clearly discretionary, the Court is foreclosed by § 1252(a)(2)(B)(ii) from reviewing Defendants' denial of Plaintiffs' I-130 petition. Having concluded that it lacks subject matter jurisdiction, the Court has no choice but to dismiss this case.[4]

---

[4] Defendants additionally seek the dismissal of the Secretary of State from this action, arguing that he is not a proper defendant under 5 U.S.C. § 703. (Defs.' Mem. Supp. [Doc. # 20-1] at 19 n.2.) Because Plaintiffs conceded this point at oral argument, Mr. Kerry is dismissed from this action.

Defendants also dispute Mr. Zieba's standing, claiming that only "the visa applicant" has standing to challenge a denial of the application, not the visa beneficiary. (*Id.*) Defendants cite two cases to support this claim—*Echevarria v. Keisler*, 505 F.3d 16, 18 (1st Cir. 2007) and *Blacher v. Ridge*, 436 F. Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006). Both cases rely on 8 C.F.R. § 103.3 for the proposition that a visa beneficiary does not have standing to challenge a denial. However, § 103.3 does not appear to be relevant to the question of whether a beneficiary may challenge a denial in an *Article III court*, as opposed to via an administrative appeal. *See* 8 C.F.R. § 103.3 ("Certain unfavorable

IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion [Doc. # 20] to Dismiss is GRANTED and because the Court has determined that it lacks jurisdiction to decide Plaintiffs' Motion [Doc. # 18] for Summary Judgment, the Clerk is directed to terminate the motion and close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March, 2015.

---

decisions on applications, petitions, and other types of cases may be appealed. Decisions under the appellate jurisdiction of the Board of Immigration Appeals (Board) are listed in § 3.1(b) of this chapter. Decisions under the appellate jurisdiction of the Associate Commissioner, Examinations, are listed in § 103.1(f)(2) of this part. . . . For purposes of this section . . . affected party . . . means the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition."). Moreover, a review of the caselaw in this Circuit reveals that the beneficiary is often a named plaintiff. *See, e.g., Ruiz*, 552 F.3d at 269 (2d Cir. 2009) (plaintiffs were the applicant and beneficiary of an I-130 petition); *Koffi v. Holder*, No. 3:09CV2102 (VLB), 2011 WL 2896049, at *1 (D. Conn. July 18, 2011) *aff'd*, 487 F. App'x 658 (2d Cir. 2012) (same); *Sofiane v. Dep't of Homeland Sec.*, No. 3:09-CV-01860 (JCH), 2010 WL 1882267, at *1 (D. Conn. May 10, 2010) (same). There does not, therefore, appear to be a basis in the caselaw for the dismissal of Mr. Zieba from this action. In addition, as Defendants conceded at oral argument, in the circumstances of this case, whether Mr. Zieba has standing is irrelevant to the disposition of the case because there is no dispute that Ms. Maldonado has standing. The Court thus declines to dismiss Mr. Zieba from the action.